IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**WILLIAM FRED CLARK,**

      **Plaintiff,**

**v.**                                                                     **2:25-cv-00222-DHU**

**SHAWNA COLEMAN;**
**NOVA TRUCKING, LLC; and**
**NOVA MUD, INC.,**

      **Defendants.**

## MEMORANDUM AND ORDER

THIS MATTER comes before the Court on Plaintiff William Clark's ("Clark") Motion for

Sanctions for the Spoliation of Evidence against Defendants Nova Mud, Inc. ("Nova Mud") and

Nova Trucking, LLC ("Nova Trucking") (collectively "Nova"). Doc. 68. Nova filed a response in

opposition, Doc. 76, and Clark filed a reply in support, Doc. 80. Upon consideration of the parties'

briefs, factual record, and applicable law, the Court will grant Clark's Motion in part.

    **I.**     **BACKGROUND**

       **a. Crash**

On March 15, 2022, in Lea County, New Mexico, Defendant Shawna Coleman

("Coleman")—who was employed by Nova, driving a tractor owned by Nova, and pulling a flatbed

trailer owned by a third party—was stopped at the stop sign at the intersection of NM Highway

529 and US 62/180. Doc. 70 at ¶¶ 11, 18, 22–23. At the same time, Clark was traveling westbound

on US 62/180 on his motorcycle. *Id.* at ¶ 24. As Clark approached the intersection with NM

Highway 529, Coleman pulled into the intersection, despite Clark having the right-of-way. *Id.* at

¶¶ 24–25. As a result, Clark and his motorcycle crashed into the back of the trailer. *Id.* at ¶ 27.

1

Alvin Lewis. Jr. ("Lewis"), a Nova employee who was driving behind Coleman at the time of the crash, arrived at the scene almost immediately and called Matthew Byrd ("Byrd") and Lee Leeper ("Leeper")—both members of Nova management—to inform them of the incident. Doc. 68-2 at 48:18–24, 95:5–12, 97:1–2. Lewis then approached Clark to assess his condition and observed that Clark was "not directly conscious," as well as "heard gurgling from his voice like he had fluid in his windpipe." *Id.* at 97:21–24. About fifteen minutes later, Leeper arrived at the scene and spoke with both Lewis and Coleman about the crash. *Id.* at 98:12–14, 99:8–11; Doc. 76-1 at 38:7–10. Coleman was ultimately cited for "failure to yield at right-of-way at stop sign," with the crash report listing "driver inattention" as a contributing factor. Doc. 68-3 at 2, 15.

### b. Post-Crash

Ten days after the crash on March 25, 2022, Clark's counsel mailed to both Nova and its insurance carrier letters of representation, which (1) stated that Clark had retained counsel in connection with his claims stemming from the crash and (2) demanded that each entity "preserve all potential evidence associated with this incident." Doc. 68-4, Doc. 68-5. On March 30, 2022, Nova's insurance carrier acknowledged receipt of the letter. Doc. 68-6 at 1. On April 6, 2022, Clark's counsel mailed to Nova's counsel and insurance carrier a litigation hold letter, which (1) stated that Clark intends to sue Nova and Coleman "for the damages caused by their negligence" and (2) "further demand[ed] that [each entity] take immediate action to preserve evidence and prevent any alteration, disposal, or movement of evidence." Doc. 68-7 at 2. The letter continued: "In order to assure that your obligation to preserve documents and things is met, please immediately forward a copy of this letter to all persons and entities with custodial responsibility for the items referred to in this letter." *Id.* at 5.

2

Originally filing suit against Defendants in March 2025, Doc. 1, Clark filed his Second Amended Complaint (the "Complaint") on February 4, 2026, Doc. 70. In the Complaint, Clark alleges that Coleman and Nova's negligence resulted in him sustaining "severe and permanent personal injuries including multiple fractures and a traumatic brain injury." *Id.* at ¶ 44. As relevant to this Motion, Clark alleges that Nova "willfully, wantonly, and recklessly" chose to have Coleman navigate the relevant intersection despite its knowledge that she "was inadequately qualified and trained to drive a tractor trailer anywhere." *Id.* at ¶ 43.

Litigation ensued. In response to Clark's first set of discovery requests, Nova stated that it no longer possessed or controlled various information due to it no longer using ERoads Fleet Management ("ERoads"), the trip and data log company it used at the time of the accident. Such information includes:

- All trips taken by Coleman in the week preceding and including the trip she was on at the time of the crash. Doc. 68-10 at 2, Doc. 68-11 at 2–3.

- For the transportation segment(s) Coleman drove culminating in the crash, a complete chronological account of the route actually traveled and all times and distances. Doc. 68-10 at 3–4, Doc. 68-11 at 4–5.

- All settlement/pay records relating to the transportation segment(s) Coleman drove culminating in the crash and relating to any trip Coleman drove in the thirty days preceding the transportation segment(s) Coleman drove culminating in the crash. Doc. 68-10 at 5, Doc. 68-11 at 6.

- All bills of lading, delivery receipts, lumper receipts, scale tickets, weight tickets, and cargo securement instructions for the transportation segment(s) Coleman drove culminating in the crash. Doc. 68-10 at 6, Doc. 68-11 at 7–8.

3

- All electronic logging device data for Coleman and any tractor she drove for seven days before through seven days after the crash. Doc. 68-10 at 7, Doc. 68-11 at 8–9.

- All "Admin/audit logs for your ELD/telematics platform(s)" showing who edited and approved Coleman's logs in the thirty days before the crash. Doc. 68-10 at 7–8, Doc. 68-11 at 9.

- All "Telematics/GPS breadcrumbs" for the tractor Coleman was driving in the crash for twenty-four hours before through twenty-four hours after the crash. Doc. 68-10 at 9–10, Doc. 68-11 at 10.

Depositions that occurred from November 2025 to January 2026 further revealed the limited scope of information available to Nova, with Byrd even testifying that numerous items the litigation hold letter requested to be preserved were in fact not preserved. Doc. 76-1 at 17:4–7. Regarding ERoads, NOVA, as previously alluded to, (1) had the platform in place at the time of the crash, (2) used it to track a vehicle's location and speed every fifteen minutes, and (3) switched it out for another system around June 2024. Doc. 68-9 at 48:6–17, Doc. 76-3 at 30:4–16.

Regarding documentation of Coleman's training, Nova initially hired Coleman as a truck driver on September 28, 2021. Doc. 70 at ¶ 12. Coleman worked at Nova for approximately one month before she quit and went to work elsewhere. *Id.* at ¶ 17. Coleman was rehired by Nova in mid-February 2022. *Id.* at ¶ 18. In its hiring process, Nova requires, among other things, that drivers take a road test and that a motor vehicle record (MVR) check is performed on the driver, regardless of whether they are an initial hire or a re-hire. Doc. 68-9 at 76:12–23. According to Byrd's deposition testimony, he did not see any documents "that told [him] one way or the other" whether Coleman completed a second road test when she was rehired. *Id.* at 77:15–25. In a similar

vein, when asked if he saw any documents indicating that Coleman's MVR status had been run when she was rehired, Byrd answered, "there's not much to it." *Id.* at 78:8–12.

Regarding electronic communications, Nova's dispatch used a Nova phone to text drivers regarding their loads and any "issues" on their trip. *Id.* at 52:4–24. Byrd testified that when he "[w]ent through the dispatch phone, [he] could not find text messages or anything linked back" to the crash. Doc. 76-1 at 9:14–16. Byrd also testified that when Tommie Griffin ("Griffin")—Nova's Director of Compliance, Human Resources, and Safety, Doc. 68-8 at 9:2–7—told Nova's information technology (IT) director to see if he could find any emails or files that were on the server connected to this case, the IT director could not do so due to the passage of time and the change in servers. Doc. 76-1 at 8:17–9:4. Griffin similarly affirmed that no search had been made of Nova employees' emails about the crash. Doc. 76-3 at 29:15–19.

Regarding photos of the vehicle and the scene, Lewis took photos with his phone of the motorcycle, debris, and tractor, and texted them to Byrd and Leeper. Lewis no longer possesses these photos on account of getting a different phone since the crash. Doc. 68-2 at 100:15–101:6. Likewise, Byrd testified that he could not find any of the photos Lewis sent him on either his phone or the dispatch phone. Doc. 68-1 at 32:2–7. Nevertheless, when Griffin started working at Nova in the summer of 2023, he recalled Leeper showing him pictures of the crash. Doc. 68-8 at 39:11–19.

Regarding paperwork that Nova drivers submitted at the end of a workday, it was standard practice at the time of the crash for drivers to submit their bill of lading/s, field ticket/s, pre-trip form, and post-trip form. Doc. 68-9 at 38:11–39:19. As the person who maintained this paperwork, Byrd testified that (1) it never occurred to him to set aside Coleman's files from the day of the crash, *id.* at 51:10–19, and (2) he never attempted to find Coleman's files from the day of the crash because he knew he did not have them anymore on account of only keeping records for six months

5

at a time, *id.* at 40:25–41:5. Relatedly, Griffin did not ask Byrd to locate this paperwork until about two to three weeks prior to Byrd's first deposition on November 5, 2025. *Id.* at 41:6–9.

Regarding the investigative file for the crash, Nova had an unwritten policy that, in the event of a crash involving one of its vehicles, the company would create an incident report; create a file comprising the crash report, pictures from the crash, sworn statements from any employee involved in the crash, and the Department of Transportation (DOT) reporting information; and conduct an investigation into whether the crash was preventable and whether the driver was negligent. Doc. 68-1 at 25:8–16, 26:16–27:1, 30:3–7, 31:18–25, 33:11–16. According to Byrd's testimony, not only is there no record of Leeper having conducted a "full and complete investigation" of the crash, but there is also no record of Leeper having created an incident report on the crash. *Id.* at 26:16–22, 30:3–11. In addition to an internal investigation being conducted in these circumstances, a third party—namely Steve Hart ("Hart"), Nova's DOT HAZMAT consultant and owner of MidAmerica Transportation, Doc. 76-3 at 65:24–66:5—would conduct an investigation and then share the results of such with Scott Bromley ("Bromley"), one of Nova's principals. *Id.* at 35:3–12. While Bromley said that he remembered getting something back from Hart on the crash, "he didn't remember the topic on it." Regardless, Bromley no longer has whatever he was given. *Id.* at 35:13–24.

Regarding the tractor Coleman was driving at the time of the crash, it was eventually moved to a junkyard after being disassembled. This is because, after Bromley received the litigation hold letter, Nova's insurance carrier informed him that the property damage aspect of the case was over, leading Bromley to believe that "everything was finished." Doc. 76-1 at 14:16-25, 28:3–29:21. Byrd testified that Bromley did not let anyone know that the property damage aspect of the case

was over, and that when Nova attempted to locate the event data recorder or "black box" in the tractor, it was gone. *Id.* at 29:1-4; Doc. 68-1 at 20:21–21:-3.

### c.  Motion for Sanctions

Clark filed the instant Motion upon learning that Nova "lost and/or destroyed" the aforementioned items. Doc. 68 at 2. In his Motion, Clark asserts that (1) Nova knew or should have known that there was a reasonable possibility of future litigation involving the crash; (2) Nova admits that the requested evidence could have been preserved; (3) Nova possessed and then destroyed evidence relevant to proving Clark's claims of negligent driving, negligent hiring, negligent training, negligent supervision, and willful, wanton, and reckless conduct; (4) Clark acted with due diligence with respect to the evidence destroyed by Nova; (5) Nova negligently and, in some cases, intentionally destroyed evidence; and (6) Clark is highly prejudiced by Nova's destruction of relevant evidence. *Id.* at 3–10. As such, Clark asks that the Court allow him to present an adverse jury instruction as sanctions for Nova's spoliation. *Id.* at 10.

In response, Nova asserts that (1) Clark has made no effort to restore or replace the allegedly spoliated electronically stored information (ESI); (2) Clark is minimally prejudiced, if at all, by the loss of the allegedly spoliated evidence; and (3) the Court cannot impose an adverse inference sanction because there is no evidence that Nova acted with bad faith. Doc. 76 at 6–18.

## II.    LEGAL STANDARDS

### a.  Spoliation

Putative litigants are obligated to preserve evidence when they have notice that the evidence is relevant to litigation or when they should have known that the evidence may be relevant to future litigation. *See Browder v. City of Albuquerque*, 187 F. Supp. 3d 1288, 1294 (D.N.M. 2016) (citing *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003)). This duty to

preserve evidence arises when potential litigation becomes "imminent." *U.S. ex rel. Baker v. Cmty. Health Sys., Inc.*, 2012 WL 12294413, at *3 (D.N.M. Aug. 31, 2012) (citing *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009)). "Spoliation includes the intentional or negligent destruction or loss of tangible and relevant evidence which impairs a party's ability to prove or defend a claim." *Id.* To prevent spoliation, a party must "suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents" as soon as the party reasonably anticipates litigation. *See Browder*, 187 F. Supp. 3d at 1294–95 (*quoting Baker*, 2012 WL 12294413, at *2). The Tenth Circuit has held that this "litigation hold" applies to tangible evidence, beyond just records or documents. *See Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 620, 637 (D. Colo. 2007) (imposing sanctions for the destruction of electronic media); *Jordan F. Miller Corp. v. Mid-Continent Aircraft Serv., Inc.*, 139 F.3d 912, 1998 WL 68879, at *7 (10th Cir. Feb. 20, 1998) (affirming district court's imposition of sanctions on party for losing damaged aircraft landing gear).

Counsel for the parties have a continuing responsibility to ensure that the parties preserve relevant information. *Baker*, 2012 WL 12294413, at *2 (citing *Zubulake v. UBS Warburg LLC* ("*Zubulake 2*"), 229 F.R.D. 422, 432 (S.D.N.Y. 2004)). This responsibility obligates counsel to do more than simply "notify all employees of a litigation hold and expect that the party will then retain and produce all relevant information." *Id.* Counsel must go beyond mere notification and "take affirmative steps to monitor compliance[,]" including by talking to IT personnel in order to learn about backup procedures and by talking to "key players" in the litigation in order to understand how information is stored. *Id.* (emphasis omitted). "At the end of the day, however, the duty to preserve and produce documents rests on the party." *Zubulake 2*, 229 F.R.D. at 436.

    **b. Sanctions for Spoliation**

8

"Spoliation sanctions are proper when '(1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence.'" *Turner*, 563 F.3d at 1149 (quoting *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007) (citation omitted)). In deciding whether sanctions are appropriate, courts generally consider the following two factors to carry the most weight: (1) the degree of culpability of the party who lost or destroyed the evidence, and (2) the degree of prejudice the other party sustained. *See Browder*, 187 F. Supp. 3d at 1295.

If the "aggrieved party seeks an adverse inference to remedy the spoliation, it must also prove bad faith." *Id.* at 1296; *Jones v. Norton*, 809 F.3d 564, 580 (10th Cir. 2015). Bad faith requires "some showing of willful destruction of evidence." *Browder*, 187 F. Supp. 3d at 1300 n.6. Accordingly, "[m]ere negligence in losing or destroying records is not enough because it does not support an inference of consciousness of a weak case." *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997). Negligence can, however, support an imposition of lesser sanctions. *See Turner*, 563 F.3d at 1149; *Browder*, 187 F. Supp. 3d at 1295-96 (lesser sanctions may be imposed "even where evidence was lost or destroyed due to negligence, so long as the party seeking sanctions can show it suffered prejudice and the other side was on notice that the evidence should be preserved"). "Federal courts possess the inherent powers necessary 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases,' including imposing appropriate sanctions." *Helget v. City of Hays, Kan.*, 844 F.3d 1216, 1226 n.6 (10th Cir. 2017) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)).

### III.  DISCUSSION

#### a.  Timeliness and adequacy of a litigation hold

"When litigation is 'reasonably foreseeable' is a flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry." *Baker*, 2012 WL 12294413, at *4 (quoting *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011)). Here, Clark's counsel made it clear that litigation was reasonably foreseeable: Nova's counsel received written notice that litigation was imminent in the April 6, 2022 letter. Doc. 68-7, Doc. 76-1 at 14:1–10. The wording of the letter left no room for doubt: "My law firm intends to pursue a civil lawsuit against Nova Mud, Inc. and Shawna Coleman for the damages caused by their negligence." Doc. 68-7 at 2. Clark's counsel did not simply give notice of impending litigation; he actually requested a litigation hold, itemizing twenty-four categories of evidence that Clark would seek as part of his lawsuit and telling Nova to forward the letter to "all persons and entities with custodial responsibilities for the items referred to in this letter." *Id.* at 5. Thus, from at least April 2022 forward, Nova's counsel had a duty to ensure that both Nova employees and external stakeholders would preserve all evidence relevant to the crash. *See Baker*, 2012 WL 12294413, at *2. However, "[n]o evidence was submitted to the Court as to which specific individuals were notified that they were part of a litigation hold. Likewise, the Court has not been advised what directives, if any, were given to the key players, and similar *minimal* actions necessary for an adequate and effective litigation hold." *Id.* at *11.

Nova goes so far as to charge Clark with "ma[king] no effort to ascertain whether" the ERoads data regarding Coleman's driving and the tractor at the time of the crash is "available through other discovery methods, such as issuing a subpoena to ERoads." Doc. 76 at 7. Nova similarly argues that Clark "could have issued a subpoena or otherwise seek discovery from MidAmerica Transportation requesting any records or information in its possession relevant to Ms. Coleman's training or to its investigation of the collision, if any." *Id.* Lastly, Nova submits that

10

Clark could depose Leeper to potentially replace "some of the evidence contained in the allegedly spoliated ESI," as Leeper "may know the whereabouts, have access to, or have knowledge of some of the unavailable evidence [Clark] seeks." *Id.* The Court rebukes Nova's attempts to shift its burden of communicating with key players in the litigation to Clark, as such a shift is contrary to established law. *See Baker*, 2012 WL 12294413, at *2.

For the foregoing reasons, the Court finds that Nova failed to timely initiate and adequately supervise a litigation hold.

### b. Spoliation sanctions

#### i. Culpability

"Culpability is the degree of fault to be assigned to the offending party." *Id.* at *12. The "destruction of potentially relevant evidence obviously occurs along a continuum of fault—ranging from innocence through the degrees of negligence to intentionality." *Welsh v. United States*, 844 F.2d 1239, 1246 (6th Cir.1988), *overruled on other grounds by Adkins v. Wolever*, 554 F.3d 650 (6th Cir. 2009).

Nova explains that "some of the evidence [Clark] seeks in this case has been lost or is no longer available to [Nova] due to changes since the accident," including a new company server and third-party fleet management system, Leeper's departure from Nova in or around September 2025, and Hart's death in or around January 2024. Doc. 76 at ¶ 6. Clark asserts that "[t]he evidentiary record reveals a different reality," and the Court agrees. Doc. 80 at 1. Indeed, instead of complying with the prompt and painstakingly specific preservation demand, Nova (1) deleted photographs of the crash scene detailing the position of the tractor at the time of the crash; (2) chose not to search for internal emails related to the crash; and (3) unilaterally decided the case

11

was "finished," resulting in the tractor being cannibalized for parts and the tractor's electronic data recording device disappearing.

Moreover, Nova has not demonstrated that the requested and subsequently deleted ESI was inaccessible for any reason other than its own fault. For instance, after its duty to preserve attached in April 2022, Nova had access to the ERoads data until it switched to a different platform in June 2024—a time span of over two years. Before voluntarily terminating the ERoads contract, Nova failed to memorialize its account information to a back-up storage system, nor did it notify Clark that this data was no longer going to be in its control and was in danger of being destroyed. In other words, Nova took no steps to preserve the ESI, either for itself or anyone else.

All of these actions (and inaction) by Nova were taken despite Byrd's admission that all of evidence requested for preservation could have been saved had Nova collected it within approximately three weeks after the crash. Doc. 68-1 at 19:2–20. Byrd also testified that when Nova was sued in a prior lawsuit in connection with a fatal crash, steps were taken to preserve all evidence associated with the crash, testimony which demonstrates that Nova had institutional knowledge of the importance of preserving evidence for future litigation. *Id.* at 18:15–19:1.

For the foregoing reasons, the Court finds that Nova is negligent in failing to preserve potentially critical evidence.

### ii. Prejudice

Clark asserts that he is prejudiced by not having access to the various evidentiary sources because:

- The photos from the scene would have shown precisely how much of Clark's lane of travel was blocked by the tractor-trailer and would have allowed a more precise reconstruction of the crash. Doc. 68 at 6.

- Had the investigative files for the crash been preserved, they would have, at a minimum, established Nova's own conclusions and those of the third party regarding the preventability of the crash and whether Coleman was negligent. The files also would have likely contained facts that were observed about the scene and additional information about conversations with Coleman. *Id.*

- Given Clark's allegation that Nova willfully, wantonly, and recklessly placed a driver with very little experience on the road, Coleman's complete training records would have given Plaintiff important evidence to establish that allegation. *Id.* at 7.

- The electronic communications may have included texts and emails about what happened on the day of the crash and may have included admissions by Nova and/or Coleman. *Id.*

- The paperwork that Coleman would have submitted at the end of her workday would have been important to establishing the route taken to the destination and whether Coleman diverted from that route on the way back to the yard when the crash occurred. The paperwork may also have helped Clark verify whether Nova or a third party was directing the route of travel. *Id.* at 8.

- The ERoads data would have been valuable to Clark to evaluate Coleman's driving behavior leading up to the event not just on the day of the crash, but in the thirty days beforehand, as well as to determine if Nova was ignoring dangerous driving habits such as speeding that should have led to discipline or termination before the crash. Clark has also alleged that a better, safer route was available to Coleman that would not have involved her going through the dangerous intersection where the

13

crash occurred. Pinpointing her locations during her trip would have assisted Clark in verifying Coleman's routes to and from her destination. *Id.*

- The event data recorder may have captured vital data about whether there was a sudden deceleration or acceleration event that accompanied the crash. *Id.* at 9.

Nova counters that Clark is not prejudiced because, in relation to his negligence claims against Coleman, Clark already possesses the police report and traffic citation associated with the crash, both of which attribute fault to Coleman. Doc. 76 at 14. The Court finds Nova's argument unavailing, for it is not up to Nova to decide what evidence is or is not relevant to Clark's case. "As one court stated, '[t]he argument of an accused spoliator that it did not violate its duty to preserve evidence because it retained'" what it considered relevant and only destroyed what it found to be irrelevant "rings particularly hollow. The ultimate decision of what is relevant is not determined by a party's subjective assessment filtered through its own perception of self-interest." *Baker*, 2012 WL 12294413, at *11 (quoting *Goodman v. Praxair Servs. Inc.,* 632 F. Supp. 2d 494, 517 n.12 (D. Md. 2009)).

The *Baker* court also noted that "prejudice is shown when the destroyed evidence goes to a critical issue and the evidence at hand is conflicting." 2012 WL 12294413, at *14. Here, Clark has no memories of the crash due to his injuries, making Coleman the only eyewitness to the incident. However, Coleman has given conflicting accounts as to how the crash occurred. At his second deposition, Byrd indicated that he noticed discrepancies between what Coleman wrote in her personal incident report and what she told law enforcement at the scene. Doc. 68-1 at 36:22–37:2. Byrd also testified that the crash report and what Coleman told law enforcement differs from Lewis' deposition testimony. *Id.* at 37:3–7. Thus, the spoliated evidence goes to an issue where

current evidence is conflicting, for the jury will not be able to evaluate the ERoads data (among other sources) to determine whether Nova committed reckless and wanton conduct as alleged.

For the foregoing reasons, the Court finds that there is sufficient evidence of prejudice to Clark from the evidence's lack of preservation.

### iii. Sanctions

Nova's failure to issue a timely and adequate litigation hold; to preserve evidence specifically listed in the April 6, 2022 letter; to communicate with key employees who had control over the evidence; and to "ensure that proper procedures were being followed . . . all indicate that it is more probable than not that relevant evidence was destroyed." *Baker*, 2012 WL 12294413, at *17. Nova has offered no legitimate excuse for the loss or destruction of the evidence, and no persuasive argument that they should not be sanctioned. While the Court cannot find that Nova's "actions amounted to bad faith or intentional misconduct, . . . it is clear that" Nova's behavior "threatens the integrity of the judicial process" and warrants the imposition of sanctions. *Id.*

In fashioning sanctions for spoliation of evidence, the Court is mindful of the purposes of such consequences: sanctions should punish, promote fact-finding accuracy, and compensate the aggrieved party. *Id.* at *3 (citation omitted).

The Court will allow Clark to present evidence that he asked Nova to preserve the items listed in the April 6, 2022 letter; that Nova knew the importance of preserving these items; and that through negligence, Nova did not preserve the items, and along with it, any opportunity for the jury to learn what the items might have contained that would have reflected on Nova's story or credibility. *See Browder*, 187 F. Supp. 3d at 1295-96 ("sanctions include . . . allowing the aggrieved party to question a witness in front of the jury about the missing evidence"). Because the Court has found negligence, rather than bad faith, on the part of Nova, it finds that a jury

15

instruction requiring an adverse inference would be inappropriate. Notwithstanding, the Court will give an instruction that allows the jury to make any inference they believe appropriate in light of the spoliation. The Court leaves it to counsel to craft a jury instruction they can agree on. Failing agreement, the Court will craft its own such instruction

## IV.    CONCLUSION

Clark's Motion for Sanctions for the Spoliation of Evidence by Nova is **GRANTED IN PART** as outlined above.

**IT IS SO ORDERED**.

_____
HONORABLE DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE

16